**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
---------------------------------------------------------X
                                                    :
MALCOLM HOLLENSTEINER,                              :
                                                    :
                                   Plaintiff,        :
                                                    :          Case No. 10-cv-00200 (AW)
                                                    :
          - against -                                :
                                                    :
WATERFIELD GROUP; WATERFIELD                        :
BANK; and DAVID BROWN, in his official             :
and individual capacities,                          :
                                                    :
                                   Defendants.   :
---------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT**
**WATERFIELD GROUP'S MOTION TO DISMISS**

**BAILEY & EHRENBERG PLLC**

Jason H. Ehrenberg
1015 18th Street, N.W., Suite 601
Washington, D.C.  20036
Telephone: (202) 331-1331
Facsimile: (202) 318-7071
jhe@becounsel.com

and

**THOMPSON WIGDOR & GILLY LLP**

Scott B. Gilly (*pro hac vice*)
85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
sgilly@twglaw.com

*ATTORNEYS FOR PLAINTIFF*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. i

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS ................................................................................................2

ARGUMENT ....................................................................................................................3

  I.  STANDARD FOR MOTION TO DISMISS ........................................................4

  II.  PLAINTIFF STATES A CLAIM AGAINST AFFINITY AS BOTH PLAINTIFF'S
      EMPLOYER AND THE PARENT COMPANY OF WATERFIELD BANK .................... 6

      A.  The Agreement Contains Enough Facts On Its Own To Deny Affinity's
          Motion to Dismiss ................................................................................................. 6

      B.  Taking Into Consideration A Document Outside The Pleadings, But
          Referred To In The Complaint, Plaintiff Has Clearly Plead An Employment
          Relationship Between He And Affinity ................................................................ 7

      C.  Defendant Affinity Is Liable Based On The Integrated Employer Test ............... 10

      D.  The Court Should Allow Plaintiff To Amend His Complaint, If Necessary,
          Based On The New Allegations Contained Herein ............................................... 14

  III.  AFFINITY CAN BE HELD LIABLE AS AN EMPLOYER UNDER THE
       MARYLAND WAGE PAYMENT AND COLLECTION LAW ....................................... 15

      A.  Plaintiff's Complaint Contains Sufficient Facts To Hold Affinity Liable As
          Employer Under The Maryland Wage Payment And Collection Law ................. 15

      B.  The Severance And Release Agreement Also Can Be Considered To
          Establish That Affinity Was Plaintiff's Employer ................................................ 17

      C.  Affinity May Also Be Liable Under The MWPCA Based On The Integrated
          Employer Test ....................................................................................................... 18

  IV.  PLAINTIFF STATES A CLAIM AGAINST AFFINITY AS BOTH PLAINTIFF'S
       EMPLOYER AND THE PARENT COMPANY OF WATERFIELD BANK .................... 19

CONCLUSION ..............................................................................................................20

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009) ........................................................................................4

*Edwards v. City of Goldsboro*,
    178 F.3d 231 (4th Cir. 1999) ...........................................................................14

*Estate of Boliek v. Estate of Frendlich*,
    No. 04-CV-3655 (RDB), 2005 U.S. Dist. LEXIS 11182 (D. Md. June 7, 2005) ...............7

*EEOC v. AMX Communs., Ltd.*,
    No. 09-CV-2483 (WDQ), 2010 U.S. Dist. LEXIS 65015 (D. Md. June 29, 2010) ...........14

*Flores v. Deutsche Bank Nat'l Trust Co.*,
    No. 10-CV-0217 (DKC), 2010 U.S. Dist. LEXIS 67255 (D. Md. July 7, 2010) ...............6

*Freire v. Keystone Title Settlement Servs.*,.
    No. 08-CV-2976 (AW), 2009 U.S. Dist. LEXIS 121190 (D. Md. Dec. 29, 2009) ..........10

*FTC v. Innovative Mktg.*,
    654 F. Supp. 2d 378 (D. Md. 2009) ..................................................................4

*G.M. Pusey and Associates Inc. v. Britt/Paulk Ins. Agency, Inc.*,
    No. 07-CV-3229 (RDB), 2008 WL 2003747 (D. Md. May 6, 2008) ...............................19

*Goodman v. PraxAir, Inc.*,
    494 F.3d 458 (4th Cir. 2007) ...........................................................................15

*Himes Assocs., Ltd. v. Anderson*,
    943 A.2d 30 (Md. Ct. Spec. App. 2001) .........................................................16

*Hukill v. Auto Care, Inc.*,
    192 F.3d 437 (4th Cir. 1999) .................................................................10, 13, 18

*Jarvis v. Chimes, Inc.*,
    No. 06-CV-1197 (RDB), 2008 U.S. Dist. LEXIS 16541 (D. Md. March 4, 2008) ..... 10-12

*Johnson v. Flowers Industries, Inc.*,
    814 F.2d 978 (4th Cir. 1987) ...........................................................................10

*Kyle v. Morton High School*,
    144 F.3d 448 (7th Cir. 1998) ............................................................................7

*Magee v. DanSources Tech Servs.*,
    769 A.2d 231 (Md. Ct. Spec. App. 2001) ........................................................................18

*Malin v. Siemens Med. Solutions Health Servs.*,
    638 F. Supp. 2d 492 (D. Md. 2008) ..............................................................................6

*Marroquin v. Canales*,
    505 F. Supp. 2d 283 (D. Md. 2007)..............................................................................19

*Platone v. Atlantic Coast Airlines Holdings, Inc.*,
    No. 2003-SOX-27, 2004 DOLSOX LEXIS 69 (ALJ Apr. 30, 2004) ...............................6

*Retirement Sys. of LA v. Hunter*,
    477 F.3d 162 (4th Cir. 2007) .........................................................................................14

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
    351 F. Supp. 2d 334 (D. Md. 2004)..............................................................................8, 9

*Rush v. Am. Home Mortg., Inc.*,
    No. WMN-07-CV-0854, 2009 U.S. Dist. LEXIS 112530 (D. Md. Dec. 3, 2009) ............4

*Secretary of State for Defence v. Trimble Navigation Ltd.*,
    484 F.3d 700 (4th Cir. 2007) .........................................................................................9

*Shonk v. Fountain Power Boats*,
    338 Fed. Appx. 282 (4th Cir. 2009)...............................................................................14

*Swedish Civil Aviation Admin. v. Project Management Enterprises, Inc.*,
    190 F.Supp.2d 785 (D. Md. 2002) ........................................................................... 19-20

*Tawwaab v. Va. Linen Serv.*,
    No. AW-09-00553, 2010 U.S. Dist. LEXIS 75827 (D. Md. July 28, 2010) ....................18

*Thomas v. BET Sound-Stage Restaurant/Brettco, Inc.*,
    61 F. Supp. 2d 448 (D. Md. 1999) ...............................................................11, 14, 15, 19

*Trevino v. Celanese Corp.*,
    701 F.2d 397 (5th Cir.1983) .........................................................................................13

*Watkins v. Brown*,
    173 F. Supp. 2d 409 (D. Md. 2001) ..........................................................................17, 18

*Watson v. CSA, Ltd.*,
    376 F. Supp. 2d 588 (D. Md. 2005) ..............................................................................13

*West v. CSX Corp.*,
  No. 05-CV-3256 (JFM), 2006 U.S. Dist. LEXIS 6071 (D. Md. Feb. 16, 2006) ..............10

*Wilkins v. United States*,
  No. L-09-1576, 2009 U.S. Dist. LEXIS 90661 (D. Md. Sept. 30, 2009) .......................4, 6

## MISCELLANEOUS AUTHORITIES

Fed. R. Civ. P. 8(a)(2)..................................................................................................................4

Fed. R. Civ. P. 15(a)(1)(A)-(B)..................................................................................................14

Fed. R. Civ. P. 15(a)(2)..............................................................................................................14

Md. Code Ann. Lab. & Empl. § 3-501(b)...................................................................................15

Md. Code Ann. Lab. & Empl. § 3-101(c)(1)-(2) .......................................................................16

Plaintiff Malcom Hollensteiner ("Plaintiff" or "Mr. Hollensteiner") respectfully submits this Memorandum of Law in opposition to Defendant Affinity Financial Corporation d/b/a Waterfield Group's ("Affinity" or the "Company")[1] Motion to Dismiss Plaintiff's Complaint. As set forth below, Affinity's motion is devoid of merit as a matter of both fact and law, and should therefore be denied as to Plaintiff's First, Second and Third Causes of Action because the Complaint as pled states a cause of action and an employment relationship exists between Affinity and Plaintiff.  In addition, in the event that the Court finds that a formal employment relationship did not exist between Affinity and Plaintiff, Plaintiff has properly pled quasi-contractual claims in the alternative, which also do not warrant dismissal at this early juncture.

## PRELIMINARY STATEMENT

In moving to dismiss Plaintiff's Complaint, Global Affinity takes an overly technical view of the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure and ignores the factual allegations contained in the Complaint.  In so doing, Affinity attempts to couch Plaintiff's factual allegations as legal conclusions that are not entitled to deference at the pleading stage.  Throughout the Complaint, Plaintiff groups together Affinity and Waterfield Bank (the "Bank") to demonstrate the integration between the two entities as parent and subsidiary, respectively.  Plaintiff admits that the parent-subsidiary relationship between the two entities was not more explicitly spelled out on the face of the Complaint, but these facts are not disputed here.  The two companies were grouped together in the allegations because there is no difference between the two.  When one acts, they are both acting.  While Plaintiff's Complaint could be amended to include an explicit statement of the relationship between Affinity and the Bank, this cannot detract from the existing factual allegations supporting Affinity's liability.  The

---

[1]        Plaintiff will refer to Waterfield Group as "Affinity" throughout this motion for ease of reference and because Affinity, not Waterfield Group, is the entity referenced on the documents cited herein.

facts on the face of the Complaint are enough to defeat Affinity's motion to dismiss Plaintiff's First, Second and Third Causes of Action.

In the alternative, if the Court believes that the Complaint is insufficiently pled at this time, Plaintiff can allege facts supported by Affinity's own documents that, although not presently pleaded, would be more than adequate to establish liability on the part of Affinity in an amended complaint.  Despite the fact that certain of these allegations will be raised overtly for the first time in opposition to Affinity's motion, the Court may still take account of them to defeat the motion to dismiss, particularly because they are not new or unknown to Affinity. Thus, based on the allegations in the Complaint and the additional allegations now raised based upon, *inter alia*, Affinity's own documents, Affinity's motion should be dismissed as to Plaintiff's First, Second or Third Causes of Action or, in the alternative, Plaintiff should be granted leave to amend his Complaint to account more explicitly for the relationship between Affinity, Waterfield Bank and Plaintiff's employment.

## STATEMENT OF FACTS

On June 23, 2008, Plaintiff entered into an employment contract (the "Agreement") to begin working at the Bank after weeks of negotiation.  Comp. ¶ 15; *see also* Agreement, which was annexed to the Complaint as Exhibit A.  Prior to joining the Bank, Plaintiff enjoyed a successful career as a senior executive with a leading mortgage bank where he earned substantial compensation along with generous benefits.  *See* Comp. at ¶ 11.  During the time of his prior employment, the Bank approached Plaintiff and induced him to come to the Bank by enticing him with the opportunity to manage all aspects of the Bank's retail mortgage loan business in its Bethesda, Maryland office.  *Id.* at ¶¶ 12-14.  Plaintiff was further induced to join the Bank because of the attractive compensation terms offered to him in the Agreement. *Id.* at ¶ 13.  As

2

part of the Agreement, Plaintiff was guaranteed a severance payment of no less than $300,000 should his employment be terminated without cause within a year after the date he began working, which occurred August 6, 2008.  *Id.* at ¶ 20.  Further, the Agreement guaranteed that Plaintiff's job responsibilities would be consistent with those of a senior level executive at the Bank.  *Id.* at ¶ 21.

Until July 2009, Plaintiff managed the division of retail mortgage loan officers and performed strictly managerial functions.  *Id.* at ¶¶ 23, 27.  On July 16, 2009, however, the Bank notified employees in writing to stop production of new mortgage loans and move all those functions to Irvine, California, the location of Affinity's corporate office.  *Id.* at ¶¶ 8, 32.  By so doing, Plaintiff was stripped of all his former job duties and prohibited him from undertaking all the tasks he had been engaged in previously.  *Id.* at ¶¶ 34-35.  Soon after moving all mortgage loan functions to Affinity's Irvine offices, all employees Plaintiff had supervised were fired and Plaintiff was left without employees or the job responsibilities guaranteed by his contract.  *Id.* at ¶¶ 36-37.  At this point, approximately one month before his one-year anniversary with the Bank, Plaintiff was constructively discharged from his position.  *Id.* at ¶ 37.

Despite no longer having any meaningful job responsibilities or the ability to originate new mortgages, Plaintiff was not immediately notified of his termination in an attempt by Defendants to avoid making Plaintiff's severance payment which was set to expire on August 6, 2009.  *Id.* at ¶ 38.  When Plaintiff notified Defendants of his constructive discharge and asked for an update on his severance payment, he was given new "duties" to attempt to mask his actual termination that were completely administrative in nature and did not comply with the promise that Plaintiff's duties be consistent with a senior level executive.  *Id.* at ¶¶ 39-40.  Even after his constructive discharge, Plaintiff fully cooperated with Defendants as required by the Agreement

and expected to receive his severance payment.  *Id.* at ¶¶ 43-44.  On September 1, 2010, Plaintiff

learned that Defendants would not honor their severance obligation under the Agreement and

Plaintiff advised Defendants that they had terminated his employment effective July 16, 2009

and were required to make his severance payment as per the Employment Agreement.  *Id.* at ¶¶

46-47.

**ARGUMENT**

### I.  STANDARD FOR MOTION TO DISMISS

The pleading standard under the federal rules "remains a liberal standard—a complaint

need only set forth a 'short and plain statement' that gives a defendant fair notice of plaintiff's

grounds for entitlement for relief."  *FTC v. Innovative Mktg.*, 654 F. Supp. 2d 378, 389 (D. Md.

2009) (quoting Fed. R. Civ. P. 8(a)(2)).  To survive a motion to dismiss, "a complaint must

contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Rush v.

Am. Home Mortg., Inc.*, No. WMN-07-CV-0854, 2009 U.S. Dist. LEXIS 112530 (D. Md. Dec. 3,

2009) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)).  The plausibility approach does

not require a showing that the plaintiff's claims are probable, but rather "it asks for more than a

sheer possibility that a defendant has acted unlawfully."  *Id.*  In looking to see whether the facts

in a complaint push plaintiff's claims into the realm of plausibility, "the court must accept as true

all well-pled allegations in the complaint, and construe the facts and reasonable inferences from

those facts in the light most favorable to the plaintiff." *Wilkins v. United States*, No. L-09-1576,

2009 U.S. Dist. LEXIS 90661 at *4 (D. Md. Sept. 30, 2009).

Based on the foregoing standard, Plaintiff has met his pleading burden with the facts

contained in the Complaint.  Assuming *arguendo* the Court does not agree, Plaintiff should be

granted leave to file an amended complaint, as the additional facts stated herein certainly show

4

that there is more than a "sheer possibility" that Affinity, along with the other Defendants, are liable for the conduct complained of by Plaintiff.

## II.   PLAINTIFF STATES A CLAIM AGAINST AFFINITY AS BOTH PLAINTIFF'S EMPLOYER AND THE PARENT COMPANY OF WATERFIELD BANK

### A.   The Agreement Contains Enough Facts On Its Own To Deny Affinity's Motion to Dismiss

Plaintiff has alleged an employment relationship between himself and Affinity (Comp. at ¶ 8), a point which Affinity necessarily concedes throughout its memorandum of law.  Further, although Affinity describes the "four corners" of the Agreement as showing only a relationship between Plaintiff and the Bank, Affinity fails to recognize that this Agreement contains numerous, explicit references to Affinity that contemplate an employment relationship between Affinity and Plaintiff.  For instance, in the section of the Agreement regarding stock options, Plaintiff was to receive stock in Affinity upon approval of the Company's Board of Directors. *See* Ex. A at ¶ 4.  Further, the Agreement allowed Plaintiff to participate in all of Affinity's pension plans, *id.* at ¶ 6, as well as instructed Plaintiff to work in the best interests of both Affinity and the Bank. *Id.* at ¶ 9.

Despite Affinity's incorrect claim to the contrary, the four corners of the Agreement do not relate solely to a relationship between Plaintiff and Waterfield Bank but, instead, reveal an inter-relationship between Affinity, the Bank and Plaintiff.  Because the Agreement was contained within the pleadings, Defendants were on notice of the facts contained therein that show an employment relationship between Plaintiff and Affinity, despite their not being elaborated on in the Complaint.  Instead of viewing these facts and the inferences drawn from them in the light most favorable to Plaintiff, Affinity relies on the unsupported claim that the

Agreement shows only a relationship between Plaintiff and the Bank to argue for dismissal where no basis for dismissal exists**.** *See Wilkins*, 2009 U.S. Dist. LEXIS 90661 at *4.

The inferences that must be drawn in Plaintiff's favor from these facts demonstrate Affinity's liability based on the parent-subsidiary relationship between the two entities. Specifically, Affinity has assumed liability here because the Affinity Board of Directors will be taking a hand in deciding Plaintiff's compensation by determining his eligibility to receive stock options and providing employee benefits. *See Malin v. Siemens Med. Solutions Health Servs.,* 638 F. Supp. 2d 492, 501-502 (D. Md. 2008) (citing *Platone v. Atlantic Coast Airlines Holdings, Inc.*, 2003-SOX-27, 2004 DOLSOX LEXIS 69 at *21 (ALJ Apr. 30, 2004) (holding parent company liable under Sarbanes-Oxley for acts of subsidiary where parent provided 401(k) plan and other benefits to employees of subsidiary)). Thus, even though the Complaint may not explicitly spell out the exact relationship between Affinity and the Bank vis-à-vis Mr. Hollensteiner, the Agreement annexed thereto alone contains enough facts to show that such a relationship in fact exists, let alone that it was plausible.

Although Affinity claims that aggregation of all the defendants manifests a deficiency in a complaint, the sole case cited for this proposition dealt with claims of fraud which require a plaintiff to meet a significantly higher pleading standard. *See Flores v. Deutsche Bank Nat'l Trust Co.*, No. 10-CV-0217 (DKC), 2010 U.S. Dist. LEXIS 67255 at *8 (D. Md. July 7, 2010) ("This case involves fraud, which requires a higher showing to survive a motion to dismiss."). Here, Plaintiff is not required to meet this higher standard, and he has pled numerous acts and omissions on the part of Affinity, in conjunction with the other Defendants, that are sufficient to survive the instant motion to dismiss.  Insofar as the aggregation in the Complaint makes it difficult for Affinity to answer that pleading, though we find that claim to be a stretch, Plaintiff

6

can plead the facts more precisely as they relate specifically to the conduct of Affinity if necessary in an amended complaint.

### B.   Taking Into Consideration A Document Outside The Pleadings, But Referred To In The Complaint, Plaintiff Has Clearly Plead An Employment Relationship Between He And Affinity

In considering the motion to dismiss, courts will also take into account new facts alleged by plaintiff but not contained in the complaint. *Estate of Boliek v. Estate of Frendlich*, No. 04-CV-3655 (RDB), 2005 U.S. Dist. LEXIS 11182 at *17 n. 8 (D. Md. June 7, 2005); *see also Kyle v. Morton High Sch.*, 144 F.3d 448, 454 (7th Cir. 1998) (allowing plaintiff to raise new factual allegations on appeal of motion to dismiss). Here, Plaintiff can allege, subject to further discovery, additional facts that demonstrate an employment relationship between Affinity and Plaintiff.

Shortly after Plaintiff notified Defendants of their requirement to make a severance payment based on his constructive discharge, Affinity mailed Plaintiff, from its offices in Irvine, a Severance Agreement and General Release (the "Severance and Release"). *See* Severance and Release, annexed to the Declaration of Jason H. Ehrenberg, dated December 6, 2010 ("Ehrenberg Decl."), as Exhibit B. The Severance and Release, drafted by Affinity, provides overwhelming support for the existence of an employment relationship between Affinity and Plaintiff. In fact, from the outset, it is apparent that Affinity itself views Plaintiff as its employee, stating in the second paragraph, "[Plaintiff]'s **employment** with Affinity will terminate on September 25, 2009." *Id.* at ¶ 2 (emphasis added). The Severance and Release makes further, and more explicit, references to Plaintiff's status as an employee, asking Plaintiff to release Affinity from all claims against it:

7

> [a]rising from or in any way connected with the *employment relationship between*
> *the parties*, any action during the relationship, and/or termination thereof,
> including, but not limited to, all "wrongful discharge" claims; and all claims
> relating any contract of employment, express or implied.

*Id.* at ¶3 (emphasis added).  Additionally, under the Severance and Release, Affinity was to pay
all of Plaintiff's compensation due, as well as make a severance payment to Plaintiff upon
signing of the Severance and Release.  *Id.* at ¶¶ 2-3.  In the Severance and Release, Affinity
could not be clearer that it either had, or believed it had, an employment relationship with the
Plaintiff.  Despite the fact that Affinity was party to the Severance and Release explicitly
acknowledging this employment relationship between it and Plaintiff, it now attempts to claim
that no such employment relationship existed as a matter of law.  This claim is entirely
unavailing due to Affinity's specific and clear language in the Severance and Release that it
considered Plaintiff an employee of the Company.

   Although the Severance and Release is not incorporated in or attached to the Complaint,
Plaintiff did plead an employment relationship between himself and Affinity.  Where a complaint
speaks generally to the content of documents outside the pleadings, those documents may be
considered to reject a motion to dismiss.  *See In re Royal Ahold N.V. Sec. & ERISA Litig.*, 351 F.
Supp. 2d 334, 387 n.44 (D. Md. 2004) (considering letter outside pleadings offered by plaintiff to
oppose motion to dismiss where letter is not explicitly cited).  Further, the Court will not require
an amended complaint where it is "more practical to consider the [document] for purposes of
[the motions to dismiss] than to require an amendment to the complaint."  *Id.*  Here, the
Complaint specifically mentioned that Defendants refused to pay Plaintiff's full severance
entitlement under the Agreement.  Comp. ¶¶ 46-47.  Despite the fact that the Severance and

Release was not annexed at that time, the Complaint makes the allegation that Defendants did not pay Plaintiff's full severance entitlement and Affinity would be on notice of the contents of the Severance and Release due to the fact it mailed the Agreement to Plaintiff and is the other party to the proposed agreement.  The contents of the Severance and Release do not present any new allegations; rather, they support facts and allegations already contained in the Complaint.  Furthermore, the Severance and Release is fully consistent with the allegations in the Complaint that Affinity was Plaintiff's employer and that Defendants declined to pay the severance amount contained in Plaintiff's employment contract.  Comp. at ¶¶ 8, 47.

The employment relationship between Affinity and Plaintiff was neither an unsupported allegation nor an assumption; in fact, the Severance and Release is clear on its face that Affinity considered itself to be Plaintiff's employer and was also aware of this relationship as the drafter of the Severance and Release.  Due to this fact, and this District's holding in *In re Royal Ahold N.V. Sec.*, 351 F. Supp. 2d at 387, the Severance and Release should be considered with Plaintiff's opposition and Plaintiff should not have to fulfill the formality of filing an amended complaint.  *See also Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (noting that courts will consider documents attached to opposition to motion to dismiss where documents are integral to complaint and authentic).  Accordingly, because the Severance and Release is so clear on its face and provides overwhelming support for the express allegation in the Complaint that Affinity is Plaintiff's employer, Affinity's motion to dismiss Plaintiff's Third Cause of Action should be denied.

### C.  Defendant Affinity Is Liable Based On The Integrated Employer Test

It is well-established in this Circuit that a parent company will be considered the employer of a subsidiary's employees if the parent exercises "excessive control…as evidenced by either (1) day-to-day supervision and control of the employment practices of the subsidiary, or (2) the parent's disregard of the corporate entities."  *West v. CSX Corp.*, No. 05-CV-3256 (JFM), 2006 U.S. Dist. LEXIS 6071 (D. Md. Feb. 16, 2006) (citing *Johnson v. Flowers Industries, Inc.*, 814 F.2d 978, 981 (4th Cir. 1987)).   The first method of proving excessive control is known as the integrated employer test, whereby the court considers four factors in the relationship between a parent and subsidiary: "(1) common management; (2) the interrelation between operations; (3) centralized control; and (4) the degree of common ownership and financial control."  *Freire v. Keystone Title Settlement Servs*., No. 08-CV-2976 (AW), 2009 U.S. Dist. LEXIS 121190 (D. Md. Dec. 29, 2009) (citing *Hukill v. Auto Care, Inc*., 192 F.3d 437, 442 (4th Cir. 1999)).

Through this test, "several companies may be considered so interrelated that they constitute a single employer."  *Hukill*, 192 F. 3d at 442.  Courts discussing the integrated employer test have stated that the third element is the most important. *Id.* at 444.  This element is satisfied by looking at which entity controls employee compensation.  *See Jarvis v. Chimes, Inc*., No. 06-CV-1197 (RDB), 2008 U.S. Dist. LEXIS 16541 at *18 (D. Md. March 4, 2008). Based on the facts in the Complaint, together with the facts alleged herein, Plaintiff has pled adequately that Affinity and the Bank may be considered a single employer.

Neither party has raised the integrated employer issue at this early stage, although Plaintiff alluded to it by alleging that Affinity was at all times considered Plaintiff's employer and by aggregating Affinity and the Bank together throughout the Complaint.  *See* Comp. at ¶ 8.  Where

the integrated employer issue is raised for the first time in response to a motion to dismiss, a plaintiff is able to utilize such facts to defeat a defendant's motion to dismiss. *See Thomas v. BET Sound-Stage Restaurant/Brettco, Inc.*, 61 F. Supp. 2d 448, 452 (D. Md. 1999) (stating that because proposed amendments to complaint were counter-arguments to defendant's motion to dismiss, court would consider them in deciding motion). In arguing that it should escape liability before it has even answered the Complaint and engaged in any discovery, Affinity relies on the technical deficiency in Plaintiff's Complaint that the integration between it and the Bank was not fleshed out in additional allegations. Here though, it is clear that Plaintiff can allege additional facts that would be more than sufficient to survive a motion to dismiss.

The Bank was acquired by Affinity in 2008 as part of the Company's strategy to offer private-label banking services through the Company itself. At that time, the Bank became a wholly-owned subsidiary of Affinity that was at least partly run from Affinity's central office in Irvine, CA. The fact that a parent company is the full owner of a subsidiary is enough to satisfy the fourth part of the integrated employer test. *See Jarvis*, 2008 U.S. Dist. LEXIS 16541 at *19 (noting that fourth part of integrated employer test could be satisfied where one entity is parent corporation of other).

Plaintiff can also allege a high level of interrelation between the operations of the two entities. Affinity purchased the Bank for the main purpose of having a place to put deposits from its private-label banking services. The Bank was directly used to enhance and expand Affinity's particular services and was a vehicle by which Affinity wanted to accomplish its own goals of expanding the Company's private-banking brand and, as such, held the Bank out as an extension of the parent company. Although Plaintiff worked in Maryland, many of his job responsibilities either ran through or were coordinated with Affinity's office in Irvine. In fact, Plaintiff was

constantly in contact with the Irvine office and worked with Affinity to partner the Bank with particular clients of Affinity in furtherance of Affinity's overall business strategy.

Further, as alleged in the Complaint, Affinity supported and pushed for the growth of the Bank's mortgage business.  Comp. at ¶ 25.  Upon closure of Plaintiff's mortgage group, all of the group's former functions were moved to Affinity's headquarters in Irvine.  Comp. at ¶¶ 8, 32. This allegation even appears on the face of the Complaint and, although it does not spell out the relationship between the two entities, it is a specific fact alleged that demonstrates the interrelation between Affinity and the Bank.

Plaintiff is also able to allege that Affinity and the Bank share common management.  At the time of Plaintiff's employment, the Bank and Affinity shared members of their respective Boards of Directors, including Roy A. Henderson, the Bank's President and CEO. *See Jarvis*, 2008 U.S. Dist. LEXIS 16541 at *17 (noting that first part of integrated employer test is met where boards of directors of two entities share members). Additionally, the Severance and Release contains a signature line for Defendant David Brown, acting President of the Bank at the time of Plaintiff's termination.  Even while acting as President of the Bank, including its office in Maryland where Plaintiff worked, Mr. Brown was based in Irvine at Affinity's headquarters. Moreover, at all times during Plaintiff's employment, the Bank's President was located in Irvine and ran the branch from there.  The Severance and Release clearly shows this common management as it was written by the President of the Bank, who was working at Affinity's corporate office in Irvine at the time, and viewed Plaintiff as an employee of Affinity.

Finally, Plaintiff can allege facts demonstrating that the third, and most important, part of the integrated employer test has been met through Affinity's compensation scheme.  *See Jarvis*, 2008 U.S. Dist. LEXIS 16541 at *17 (noting that third part of test can be satisfied by showing

which entity is in charge of compensation).  Although it claims Plaintiff was only an employee of the Bank, Affinity cut Mr. Hollensteiner's paychecks and mailed them to him from Affinity's corporate office.  Further, the Agreement delineates that Affinity was in charge of Plaintiff's 401(k) plan and provided his stock options.  The third part of the test may also be boiled down to the question of what entity made the final decisions in regard to employment matters related to Plaintiff.  *See Watson v. CSA, Ltd.*, 376 F. Supp. 2d 588, 594 (D. Md. 2005) (quoting *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir.1983)).  Affinity's ability to make final decisions in regard to Plaintiff's employment is demonstrated by the Severance and Release, which explicitly states the proposed effective date of Plaintiff's termination of employment with Affinity.  *See* Ex. B at ¶ 2.  The Severance and Release, drafted by Affinity, shows that it viewed itself as Plaintiff's employer and the entity with the ability to enter into a severance agreement with Plaintiff and, thus, shows Affinity was the final decision-maker in regard to Plaintiff's employment.

The Severance and Release clearly displays the interrelationship and common control and management of Affinity and the Bank through the statements that Affinity is in fact Plaintiff's employer and shows that it was responsible for Plaintiff's termination.  *See Hukill*,  192 F. 3d at 444 (citing *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983)) (noting that "the integrated employer test instructs the court to determine what entity made the final decisions regarding employment matters related to the person claiming discrimination").

While all of the above facts were not alleged in the Complaint, Plaintiff can do so in an amended pleading that more than adequately establishes an integrated employer relationship between Affinity and the Bank.  Where Plaintiff has pled facts sufficient to allege an integrated employer relationship, the court should deny the motion to dismiss and allow discovery to

proceed on the issue. *Retirement Sys. of LA v. Hunter*, 477 F.3d 162, 170 (4th Cir. 2007) (noting that courts must take into account "the possibility that the noticed claim could become legally sufficient if the necessary facts were to be developed in discovery"); *see also EEOC v. AMX Communs., Ltd.*, No. 09-CV-2483 (WDQ), 2010 U.S. Dist. LEXIS 65015 at *26-27 (D. Md. June 29, 2010) (same). Based on precedent within this Circuit and District, these facts should be considered at this time and Affinity's motion to dismiss Plaintiff's Third Cause of Action should be denied. *See Thomas*, 61 F. Supp. 2d at 452 (denying defendants motion to dismiss on integrated employer issue).

### D. The Court Should Allow Plaintiff To Amend His Complaint, If Necessary, Based On The New Allegations Contained Herein

In the event that the Court declines to consider Plaintiff's new allegations at this time, Plaintiff should be granted leave to file an amended complaint. As described above, Plaintiff can allege extensive facts showing that Affinity was his employer or, in the alternative, that Affinity should be held liable under the integrated employer test. If included in an amended complaint, the additional facts alleged would provide ample support for an employment relationship between Affinity and Plaintiff.

Plaintiffs are allowed to amend their complaint within 21 days after service or after receiving a responsive pleading (Fed. R. Civ. P. 15(a)(1)(A)-(B)), or in the alternative, with leave from the court or consent from the other party. Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). A court should only deny leave if amending the complaint would be prejudicial to the non-moving party, was sought in bad faith, or was futile. *Shonk v. Fountain Power Boats*, 338 Fed. Appx. 282, 288 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999)).

Here, amendment would not be prejudicial to Affinity because it drafted and, was party to, the Severance and Release; therefore it has had notice of its contents admitting Affinity's employment relationship with Plaintiff.  *Goodman v. PraxAir, Inc.,* 494 F.3d 458, 475 (4th Cir. 2007) (imputing knowledge of allegations in complaint made against one entity in group of closely related companies to other entities within that group).  Further, this amendment is not sought in bad faith and is only sought in response to, unsupported as it is by the facts, Affinity's motion to dismiss.  *See Thomas supra*, 61 F. Supp. 2d at 452 (taking into account facts raised for the first time in opposition to a motion to dismiss).  Finally, as demonstrated above, amendment of the Complaint would not be futile and would, in fact, definitively allow Plaintiff to satisfactorily plead an employment relationship between himself and Affinity given Affinity's assertion that no such relationship exists.  Accordingly, because the Plaintiff has now alleged a legion of specific facts that demonstrate that there is an employment relationship between Affinity and Plaintiff, or in the alternative that Affinity and the Bank fall within the integrated employer test, Plaintiff should be granted leave to amend his Complaint if the Court is not satisfied denying the motion based on the Complaint.

## III. AFFINITY CAN BE HELD LIABLE AS AN EMPLOYER UNDER THE MARYLAND WAGE PAYMENT AND COLLECTION LAW

### A. Plaintiff's Complaint Contains Sufficient Facts To Hold Affinity Liable As An Employer Under The Maryland Wage Payment And Collection Law

Under the Maryland Wage Payment and Collection Act (the "Act" or "MWPCA"), an employer "includes any person who employs an individual in the State or a successor of that person."  Md. Code Ann. Lab. & Empl. § 3-501(b).  This expansive definition has received little elucidation from Maryland courts, and cases discussing the MWPCA offer little guidance in interpreting this section of the statute.  Earlier sections of Maryland Labor and Employment

Code define "employ" as "mean[ing] to engage an individual to work…include[ing] allowing an individual to work; and instructing an individual to be present at a work site."   Md. Code Ann. Lab. & Empl. § 3-101(c)(1)-(2); *see also Himes Assocs., Ltd. v. Anderson*, 943 A.2d 30, 48 (Md. Ct. Spec. App. 2001) (finding that company would be considered employer under MWPCA where it only instructed its employee to attend two meetings per month in state of Maryland). Based on the statutory language, as well as the lack of interpretation from the courts, Plaintiff has adequately pleaded that Affinity is his employer under the Act.

Affinity was allowing Plaintiff to work and made this clear when all of Plaintiff's job duties were moved to its corporate office in Irvine.  Comp. ¶ 32.  After impermissibly stripping Plaintiff of his job responsibilities, Plaintiff was effectively no longer allowed to work as his contract stated he was guaranteed a senior-level executive position.  Comp. ¶ 21.  Through the action of moving all Plaintiff's job functions to Irvine, Affinity demonstrated that it had been previously allowing him to work.  Further, moving his job functions to California amounted to a constructive discharge, *see* Comp. at ¶ 37, and it is axiomatic that an employee can only be fired by his employer.  Thus, Plaintiff has pled that Affinity had a controlling hand in his constructive termination, a function reserved only for employers.

The Agreement is not nearly as clear and unequivocal on the issue of which entity (or both) was Plaintiff's true employer as Affinity portrays.  *See* Def.'s Mem., at 6.  The fact that Plaintiff's stock option plan and pension plans were run through Affinity muddles any clarity that would have otherwise been evident from the Agreement alone.  These facts alone are sufficient to withstand a motion to dismiss on the issue of whether Affinity qualifies as an employer under the Act.

**B.   The Severance And Release Agreement Also Can Be Considered To Establish That Affinity Was Plaintiff's Employer**

As discussed in Section II(b) above, Plaintiff's Severance and Release may be considered at this time in opposition to Affinity's motion to dismiss.  Just as the Severance and Release contains enough facts to plead an employment relationship between Affinity and Plaintiff, so too does it demonstrate that Affinity fits within the definition of employer under the Act.

Primarily, the Severance and Release states plainly that Plaintiff's employment with Affinity terminated on September 25, 2009.  This admission on the face of the Severance and Release directly contradicts Affinity's hyperbole in their motion that Plaintiff "could not possibly allege any facts" to suggest that Affinity was Plaintiff's employer.  *See* Def.'s Mem. at 7.  In fact, that argument is even more disingenuous due to the fact that Affinity drafted and was the other party to the Severance and Release.  As such, it would presumably have been aware of its contents.  Further, by signing the Severance and Release, Plaintiff would have released Affinity from all claims "relating to a contract of employment, express or implied."  As Affinity pointed out in its motion, the definition of employer in the Act "contemplates some sort of contractual relationship involving the payment of wages in exchange for services."  *Watkins v. Brown*, 173 F. Supp. 2d. 409, 414 (D. Md. 2001).  The Severance and Release makes clear that Affinity contemplated just such an arrangement between itself and Plaintiff by asking Plaintiff to release Affinity, not merely the Bank, from any claims arising from that relationship.  Thus, because the Severance and Release contains a precise statement that Plaintiff was employed by Affinity, and that the two parties had a contract, the Severance and Release is sufficient to plead Affinity's liability under the Act as Plaintiff's employer.

**C.  Affinity May Also Be Liable Under The MWPCA Based On The Integrated Employer Test**

If the Agreement and Severance and Release do not sufficiently demonstrate Affinity's status as Plaintiff's employer, Plaintiff can plead facts showing that Affinity can be considered an employer under the Act through the integrated employer test.  This test has been applied in a number of similar employment circumstances to determine if a parent will be liable as the employer of a subsidiary's employees.  *See Hukill*, 192 F.3d at 442 n. 6 (noting that integrated employer test has been applied under numerous federal civil rights statutes).  There is not a categorical exclusion, as Affinity would argue, against holding controlling shareholders liable as employers under the Act.  *See* Def.'s Mem. at 6 (citing *Magee v. DanSources Tech Servs.*, 769 A.2d 231, 235 n.2 (Md. Ct. Spec. App. 2001).  *Magee* is inapplicable to the present motion as the plaintiff there had been suing an individual controlling shareholder, not the parent company, a distinction glossed over by Affinity in its hope to preempt liability under the integrated employer test.  As Affinity pointed out, "there is no indication in the [MWPCA] that these definitions are any different from the commonly understood meaning of the term 'employer.'"  *Watkins*, 173 F.Supp 2d at 414.  Because the integrated employer test has been applied by Maryland courts to define "employer" under other civil rights statutes, and there is no indication in the MWPCA that it defines "employer" differently, the integrated employer test should apply equally in the context of the MWCPA.  *See Tawwaab v. Va. Linen Serv.*, No. AW-09-00553, 2010 U.S. Dist. LEXIS 75827 at *17 (D. Md. July 28, 2010) (noting that Maryland courts have construed term "employer" liberally to allow employees of subsidiary to bring claims against parent company).

As discussed above in Section II(c), Plaintiff can allege a number of facts on a good faith basis to demonstrate that Affinity, as the parent company, is a single employer with the Bank under the integrated employer test.  The two entities share common ownership.  Plaintiff was

paid by Affinity.  This fact is crucial under the integrated employer test and cannot be dismissed as Affinity attempts to do.  *Jarvis*, 2008 U.S. Dist. LEXIS 16541 at *17; *see also* Def.'s Mem. at 6.  In fact, although Affinity claims that writing checks to an employee does not establish an employment relationship, *Marroquin* is inapposite because there the court was dealing with whether or not an individual could be considered an employer for purposes of piercing the corporate veil and holding the individual liable, not the issue here.  *See Marroquin v. Canales*, 505 F. Supp. 2d 283, 299 (D. Md. 2007).

Without repeating the extensive facts previously set forth in Section II(c), these facts may be taken into account at this time to defeat Affinity's motion to dismiss with respect to Plaintiff's MWPCA claims as well. *See Thomas*, *supra* 61 F. Supp. 2d at 452.  Because the additional facts demonstrate a single employer relationship between Affinity and the Bank under the integrated employer test, Affinity's motion to dismiss Plaintiff's First and Second Causes of Action should be denied.

## IV.   PLAINTIFF STATES A CLAIM AGAINST AFFINITY AS BOTH PLAINTIFF'S EMPLOYER AND THE PARENT COMPANY OF WATERFIELD BANK

Here, a valid employment contract exists between Plaintiff and Affinity.  In the instant motion, however, Affinity denies that it is a party to the contract.  Should the Court find that Affinity is indeed not party to the contract, Plaintiff has pled quasi-contract claims in the alternative.  These quasi-contract claims would apply in the event that Affinity is not technically bound by the contract and, until a determination is made regarding Plaintiff's contract claims, the quasi-contract claims should not be dismissed.  *See G.M. Pusey and Associates Inc. v. Britt/Paulk Ins. Agency, Inc*., No. 07-CV-3229 (RDB), 2008 WL 2003747 *8 (D. Md. May 6, 2008) (allowing plaintiff to plead contract and quasi-contract claims in the alternative and denying defendant's motion to dismiss the quasi-contract claims); *Swedish Civil Aviation Admin.*

*v. Project Management Enterprises, Inc.*, 190 F.Supp.2d 785, 792 (D. Md. 2002) (refusing to

dismiss plaintiff's quasi-contract claims where those claims were pled in the alternative and the

existence of a contract was in dispute).  Or, stated simply, Affinity cannot argue both that it is

not a party to the contract and, if that is found to be true, that it cannot then be bound by quasi-

contractual remedies in the alternative.  For these reasons, Affinity's motion to dismiss

Plaintiff's Fourth and Fifth Causes of Action should be denied.

<u>**CONCLUSION**</u>

WHEREFORE, the Court should issue an order denying Affinity's motion to dismiss the

Complaint, and for such other and further relief deemed just and proper.


Dated: December 6, 2010                    Respectfully submitted,

                                           **BAILEY & EHRENBERG PLLC**


                                           By:   *//s//   Jason H. Ehrenberg*
                                                   Jason H. Ehrenberg

                                           1015 18th Street, N.W., Suite 601
                                           Washington, D.C.  20036
                                           Telephone: (202) 331-1331
                                           Facsimile: (202) 318-7071
                                           jhe@becounsel.com

                                                   and

                                           **THOMPSON WIGDOR & GILLY LLP**

                                           Scott B. Gilly (*pro hac vice*)
                                           Basil C. Sitaras (*pro hac vice application to be filed*)
                                           85 Fifth Avenue
                                           New York, NY 10003
                                           Telephone: (212) 257-6800
                                           Facsimile: (212) 257-6845
                                           sgilly@twglaw.com

                                           *ATTORNEYS FOR PLAINTIFF*


20